IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANGELA ALHILFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00235-NKL |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

Plaintiff Angela Alhilfy appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act. The Court heard oral argument on February 1, 2021. Because the Administrative Law Judge's decision is not supported by substantial evidence, the Court remands for further development of the record.

**I.      Background**

Alhilfy alleges that she became disabled on January 3, 2010. She claimed stomach, back, and left leg pain, left arm rotator cuff repair, chronic constipation, nausea, depression, anxiety, bipolar disorder, anemia, and allergies. Tr. 158, 1701, 1368, 1450, 1455. On July 15, 2013, Alhilfy filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income. Tr. 1365. These claims were initially denied on November 25, 2013. A hearing occurred and the Administrative Law Judge (ALJ) issued an unfavorable decision. Tr. 11. On July 11, 2016, the Appeals Council declined review

of the decision. Tr. 1. On August 24, 2017, the decision was reversed and remanded by the district court. The district court found that the ALJ's RFC included a restriction for work above shoulder level, yet all of the jobs listed as jobs Alhilfy could do involved reaching. Tr. 1470-71. The district court remanded and instructed the ALJ to specify whether the RFC includes no overhead reaching, and, if so, to communicate this limitation to the vocational expert. *Id.*

The Appeals Council vacated the ALJ's decision and remanded for a second hearing and further consideration. Tr. 1485-86. Alhilfy filed subsequent applications for disability insurance benefits and social security income benefits on November 4, 2016, and those applications were consolidated with the current claim. Tr. 1637-61, 1665-66. A second hearing was held, and the ALJ told the vocational expert that Alhilfy could not reach overhead, and questioned the VE consistently with that restriction. The ALJ issued a second unfavorable decision on April 18, 2019. Tr. 1362-87. The ALJ concluded that Alhilfy has the following severe impairments: obesity until gastric bypass surgery in August 2014, status post lap band surgery in 2011, history of left rotator cuff history repair, anxiety, bipolar II disorder, posttraumatic stress disorder (PTSD), degenerative disc disease of the lumbar spine, and status post right shoulder surgery. Tr. 1369. Based on those impairments, the ALJ concluded that Alhilfy has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except she is limited to only occasional climbing, balancing, stooping, kneeling, crouching, or crawling; no climbing of ladders, ramps or stairs; no work above shoulder level with the bilateral upper extremities; no reaching above shoulder level with the bilateral upper extremities; no contact with the general public; and any work must be of a simple, routine and repetitive nature. Tr. 1371. Relying on the testimony of the vocational expert, the ALJ concluded that Alhilfy is not capable of performing her past relevant work as a janitor or baker helper. Tr. 1375. However, the ALJ

2

found that jobs exist in significant numbers in the national economy that Alhilfy can perform, including semiconductor bonder, ampoule sealer, and document preparer. Tr. 1375-76.

The Social Security Administration's Appeals Council denied Alhilfy's request for review on February 3, 2020. The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II. Legal Standard

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.*

## III. Discussion

A claimant's RFC is the most the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is assessed using all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect [her] RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citing *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997)).

### A. Whether the RFC as to Alhilfy's Mental Impairments is Supported by Substantial Evidence

As to mental impairments, at step two the ALJ found anxiety, bipolar II disorder and PTSD to be severe. Tr. 1369. At step three, the ALJ found that Alhilfy has moderate limitations interacting with others and understanding, remembering, and applying information, as well as mild limitations adapting or managing oneself and concentrating, persisting, or maintaining pace. Tr. 1370. Nonetheless, the ALJ found that Alhilfy is not disabled. In the RFC, the ALJ included, "no contact with the general public; and work must be of a simple, routine and repetitive nature." Tr. 1371. The ALJ included these limitations in his questions posed to the VE. Tr. 1410.

Alhilfy contends that the ALJ failed to identify the weight given to the opinions of Dr. Margaret Sullivan, a psychologist hired by the Commissioner at the initial level, and that this omission requires reversal. Doc. 17, pp. 55-56. Dr. Sullivan reviewed Alhilfy's medical records and authored a report in 2017. Alhilfy argues that Dr. Sullivan's opinion is the only opinion of record as to her functional limitations stemming from her severe anxiety, bipolar disorder, and PTSD. *Id.* at 56.

The ALJ is required to consider the findings made by state agency physicians and psychologists. *See* C.F.R. 404.1527(f)(2), 416.927(f)(2) (ALJs not bound by findings of state agency or program medical and psychological consultants, but such findings must be considered, and weight assigned to such findings should be explained in the ALJ's decision); SSR 96-6P[1] (ALJs may not ignore expert opinion evidence of state agency consultants and "must explain the

---

[1] SSR 96-6P was rescinded and replaced by SSR 17-2 effective March 27, 2017. However, the HALLEX directs that "[f]or claim(s) filed before March 27, 2017, adjudicators must use the prior rules throughout the entire appeals process." HALLEX I-5-3-30, 2017 WL 1362776, at *5. *See also Atchley v. Berryhill*, 2018 WL 1135457, at *5-6 (D.S.D. Feb. 28, 2018) (finding SSR 96-6P applied to claim filed before effective date of SSR 17-2P, even though ALJ's hearing occurred after the effective date). The Commissioner does not posit that SSR 96-6P does not apply to Alhilfy's claim. Doc. 18. The Court will apply SSR 96-6P.

weight given to these opinions in their decisions"). The parties agree that the ALJ did not specifically mention Dr. Sullivan's report, nor assign her opinions weight. Docs. 17, 18.

The Commissioner argues this oversight was harmless because the RFC is supported by the record as a whole. Doc. 18, p. 7. However, "[i]n circumstances where a medical source opinion may affect the outcome of a case, substantial evidence does not support an ALJ's adverse decision if it cannot be determined what, if any, weight the ALJ afforded the opinion." *Dudley v. Colvin*, 2016 WL 5118584, at *12 (E.D. Mo. Sept. 21, 2016). Here, unresolved inconsistencies exist between Dr. Sullivan's opinions and the ALJ's RFC. If those inconsistencies were resolved in favor of Dr. Sullivan's opinions, the case's outcome may have changed. For example, Dr. Sullivan opined that Alhilfy has moderate limitations in the ability to work in coordination with or in proximity to others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors and getting along with co-workers and peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the workplace. Tr. 1463. The ALJ did not include these additional limitations in his RFC or the hypothetical questions. The inconsistencies suggest the ALJ disregarded at least some of Dr. Sullivan's opinions, but the decision does not explain why. *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) ("The problem with the ALJ's opinion is that it is unclear whether the ALJ *did* discount [the] opinion, and, if it did so, why.") (emphasis in original).

If the inconsistencies above were resolved in favor of including the additional limitations contained in Dr. Sullivan's report, the outcome of the case may change. For example, Dr. Sullivan opined that Alhilfy is moderately limited in her ability to respond appropriately to supervisors or co-workers and deal with changes in a routine work setting, yet all three of the

5

jobs offered by the VE require these skills. SSR 96-9p (explaining that "dealing with changes in a routine work setting" is "generally required" by unskilled work); SSR 85-15 (stating that the demands of unskilled work include responding appropriately to supervision and coworkers). Because the ALJ's questions to the VE did not include additional mental limitations as described in Dr. Sullivan's report, the Court cannot discern whether the jobs proffered by the VE, or any jobs in the national economy, would be available to Alhilfy if she indeed has these additional limitations. *Howe v. Astrue*, 499 F.3d 835, 841-42 (8th Cir. 2007) (explaining that a VE's assessment of whether jobs exist for a claimant cannot be based on a hypothetical question that does not accurately characterize a claimant's condition, including limitations on the claimant's ability to function). Thus, there is not substantial evidence in the record to support the ALJ's opinion and the matter must be remanded. *Dudley*, 2016 WL 5118584, at *12 (holding that where a medical source opinion may affect the outcome of a case, substantial evidence does not support an ALJ's adverse decision if it cannot be determined what, if any, weight the ALJ afforded the opinion).

On remand, the ALJ must determine what weight, if any, to assign to Dr. Sullivan's opinion. If the ALJ discounts any part of that opinion, the ALJ must explain why, and must formulate the RFC and hypothetical questions consistently with that determination. *McCadney*, 519 F.3d at 767; *Dudley*, 2016 WL 5118584, at *12.

### B. Whether the RFC as to Alhilfy's Physical Functional Limitations is Legally Flawed

Alhilfy also argues that the ALJ failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first. Doc. 17, p. 57. Specifically, Alhilfy contends that the ALJ failed to determine her ability to sit, stand, walk, push, and pull before deciding she

6

is capable of sedentary work. 20 C.F.R. § 404.1567(a) (Sedentary work involves "sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

SSR 96-8P states, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and "[o]nly after that may the RFC may be expressed" by exertional level of work. *See also* 20 C.F.R. § 404.1545(b) (instructing that the RFC should identify limitations on a function-by-function basis). Sitting, standing, walking, pushing, and pulling are all listed in the regulations as physical work-related abilities. *Id.* Yet in the decision, the ALJ did not identify any limitations to Alhilfy's ability to sit, stand, walk, push, or pull before limiting her to sedentary work in the RFC. Tr. 1371. The Commissioner argues that the ALJ's sedentary determination involves sitting and occasional walking and standing, and that the ALJ need not make explicit findings on every one of Alhilfy's functional limitations when most of the functional limitations are included in the RFC. The Commissioner relies on *Depover v. Barnhart* to argue that the ALJ's omission of specific limitations reveals that the ALJ did not think Alhilfy was additionally limited in her ability to sit, stand, walk, push, and pull. Doc. 18, pp. 8-9; 349 F.3d 563, 567 (8th Cir. 2003). In *Depover*, the Eighth Circuit explained that "although we would have preferred that [the ALJ] made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions. We think instead that the record reflects that the ALJ implicitly found that [the claimant] was not limited in these areas." Here, however, an implicit finding that Alhilfy was not limited in sitting, standing, and walking is not supported by substantial evidence. *Brown*, 825 F.3d at 939. Looking at the record as a whole, the evidence

7

from Alhilfy, state agency consultants, and private doctors shows that Alhilfy has limitations in standing, sitting, and walking. The Court has found nothing in the record to suggest otherwise.

For example, in the decision, the ALJ cited to the opinions of Dr. Rosamond and Dr. Eiler, two state agency medical consultants. Tr. 1374. Dr. Rosamond opined that Alhilfy could stand and walk for four of eight hours and could sit for six of eight hours. Tr. 90-92. Dr. Eiler opined that Alhilfy could stand for two of eight hours, walk for two of eight hours, and sit for eight of eight hours but only four hours at a time. Tr. 4312. Yet the ALJ did not include any stand, sit, walk limitation in the RFC. The ALJ gave Dr. Rosamond's opinions only "partial weight" because they were not based on the totality of the evidence. Tr. 1374. The ALJ gave Dr. Eiler's assessment "some weight" insofar as it was consistent with the RFC. Tr. 1374. The ALJ did not otherwise explain why he believed that Alhily did not need a sit, stand, walk limitation of any kind. In addition to the state agency medical consultants' reports, Alhilfy's subjective complaints and notes from medical appointments would also support a finding for limitations for sitting, standing, and walking. *See, e.g.*, Tr. 1736-37 (Alhilfy's function report indicating she cannot stand for long periods of time and cannot walk more than half a block before needing to rest for a couple hours); Tr. 3298 (Alhilfy claiming she can only sit for 20-30 minutes and stand for 45-60 minutes); Tr. 3279 ("[p]atient walks with limp"); Tr. 1770 (Alhilfy reporting her legs swell with fluid, requiring compression stockings); Tr. 4158-59 (diagnosing edema and prescribing a back brace); Tr. 1747 (prescribing medication and compression stockings for edema in legs); Tr. 1398 (Alhilfy testifying to using a cane and bars in her bathroom, and hoping that insurance would cover a walker with seat option).

As to pushing and pulling, the ALJ's decision reflects that the ALJ may have implicitly found no limitations or may have overlooked pushing and pulling. Either way, the error requires

8

Case 4:20-cv-00235-NKL   Document 23   Filed 02/09/21   Page 8 of 14

reversal. If the ALJ implicitly found no limitations, only the opinion of Dr. Eiler supports that finding. Dr. Eiler opined that Alhilfy can continuously push and pull with both hands. Tr. 4313. The third-party function report that Alhilfy's husband prepared indicates Alhilfy's abilities to lift and use her hands are impacted. Tr. 1729. Alhilfy's function report states the same. Tr. 1740. The record also reflects a history of left rotator cuff repair and status right shoulder surgery. Tr. 1369. Given these severe impairments paired with claimed difficulties lifting and using her hands, the Court cannot say that the ALJ's implicit finding of no limitations, assuming the ALJ did not overlook pushing and pulling, is supported by substantial evidence.[2] The ALJ may not cherry pick evidence in the record to support the RFC. *E.g.*, *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016) (remanding because the ALJ cherry picked the medical records and denied benefits). Rather, the RFC must be supported by the evidence as a whole. *Brown*, 825 F.3d at 939. Similarly, if the ALJ overlooked pushing and pulling, the case must be remanded for evaluation of those limitations. 20 C.F.R. § 404.1545(b) (instructing that the RFC should identify limitations on a function-by-function basis, including pushing and pulling).

On remand, the ALJ must assess the RFC on a function-by-function basis in accordance with 20 C.F.R. § 404.1545(b) as to sitting, standing, walking, pushing and pulling, and the ALJ must explain that assessment in detail and not rely on summary conclusion or circular reasoning such as giving weight to an expert consistent with the RFC. *See Pfitzner v. Apfel*, 169 F.3d 566, 568-69 (8th Cir. 1999) (remanding where the ALJ failed to specify the function-by-function limitations when describing the claimant's RFC).

---

[2] Moreover, there is evidence in the record of gripping and handling limitations stemming from Alhilfy's nerve palsy. *See infra* Pt. II.C. The evidence pertaining to pushing and pulling is interrelated with the evidence pertaining to gripping and handling because all four motions involve coordinated use of the arms and hands.

9

### C. Whether the RFC as to Alhilfy's Physical Functional Limitations is Unsupported by Substantial Evidence

Alhilfy also contends that the ALJ failed to include handling and gripping limitations related to her nerve palsy. Doc. 17, p. 59. The record reflects that Alhilfy was diagnosed with right radial nerve palsy after she fell and dislocated her shoulder in September 2017. Tr. 3562, 3566-67. Radial nerve palsy is a condition that can cause weakness, numbness, and an inability to control the muscles served by the impacted nerve. The ALJ's RCF does not include any limitations for handling and gripping. The only limitations that might be related to Alhilfy's nerve palsy are the restrictions to working and reaching above shoulder level, which also involve coordinated use of the arms and hands.

During the hearing, the ALJ questioned Alhilfy about her shoulder injury. Alhilfy testified that she could not raise her hand above her head, and that she has decreased sensation in her fingers and thumb and has trouble gripping and using her hands. Tr. 1408, 1413. She also stated that she used a splint. *Id.* The ALJ clarified his questioning to the VE based on Alhilfy's testimony, and asked if an individual who could frequently, but not constantly, finger, feel and handle would be able to perform the jobs listed by the VE. Tr. 1414.

However, there is not substantial evidence in the record as a whole to support the ALJ's finding that Alhilfy could frequently finger, feel, and handle. Alhilfy's function report indicates she has trouble using her hands, Tr. 1740, and that when her hands are numb, she struggles to handle objects, such as dishes, Tr. 1737. During two visits in 2015, Dr. Matthew Hastings noted, "[h]er light touch and pinprick sensation is intact throughout with the exception of mildly decreased sensation to light touch over the right index finger, right thumb, and right middle finger." Tr. 2490, 2495. In 2016, Dr. Hastings recorded "decreased sensation to pinprick over

the right index and middle fingers as well as thumb, but to a lesser degree." Tr. 2502. In 2017, Dr. Hastings again noted "mildly decreased sensation to light touch over the right index finger, right thumb, and right middle finger." Tr. 3842. An occupational therapist also recorded "touch/tactile impairment" and "radial and ulnar nerve injuries." Tr. 3622. Alhilfy's range of motion appeared limited, and she displayed slight clawing in her right small finger. Tr. 3623.

Accordingly, there is not substantial evidence in the record to support an RFC determination that does not include limitations for handling and gripping. *Brown*, 825 F.3d at 939. Consequently, the ALJ's hypothetical posed to the VE consisting of frequent fingering, feeling, and handling is not supported by substantial evidence. *Howe*, 499 F.3d at 841-42. On remand, the ALJ must make explicit findings as to Alhilfy's ability to handle and grip. The ALJ must then formulate the RFC and hypothetical questions consistently with that determination.

### D. Whether the Commissioner Failed to Sustain His Burden at Step Five

Alhilfy argues that the vocational expert (VE) testified inconsistently with the DOT. Doc. 17, pp. 60, 64. Specifically, Alhilfy argues the three jobs the VE testified she could perform all include reaching, even though the ALJ determined that Alhilfy cannot reach above shoulder level. Doc. 17, pp. 60-61.

After Alhilfy received an unfavorable decision in her first claim, she appealed, and the district court remanded due to a lack of clarity between the ALJ's RFC and the VE's testimony. Tr. 1470-71. Specifically, the district court found that the jobs identified as work Alhilfy could do all involved reaching, despite the fact that the ALJ had said no reaching above the shoulder. *Id.* The Court remanded for further evaluation of the RFC, and held that if the ALJ concluded that no work could be done above the shoulder level, the ALJ needed to explain that particular limitation to the VE to determine if there were available jobs in the national economy. Tr. 1471.

11

On remand, the ALJ's RFC includes "no work above shoulder level with the bilateral upper extremities; no reaching above shoulder level [with] the bilateral upper extremities." Tr. 1371. In his questioning, the ALJ included, "[t]here would be no work above shoulder level with the bilateral upper extremities. And, for the sake of clarification, there'd be no reaching above shoulder level with the bilateral upper extremities." Tr. 1409-10. The VE offered three jobs: semiconductor bonder, ampoule sealer, and document preparer. *Id.* However, the Selected Characteristics of Occupations Defined, a companion volume to the DOT, lists these jobs as requiring occasional or frequent reaching. Specifically, document preparer and ampoule sealer require reaching frequently, meaning that it "[e]xists from 1/3 to 2/3 of the time". *See* DOT 559.687-014; DOT 249.587-018. Semiconductor bonder requires reaching occasionally, meaning that it "[e]xists up to 1/3 of the time." *See* DOT 726.685-066.

Under SSR 00-4P, the ALJ must "ask about any possible conflict" between VE evidence and "information provided in the DOT." If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given provides a basis for relying on the [VE] testimony rather than on the DOT information." SSR 00-4P. Failure to follow this requirement constitutes error. *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). Because the RFC precludes Alhilfy from any work or reaching above her shoulder, there appears to be a conflict between the RFC and the three jobs offered by the VE that involve either occasional or frequent reaching. *See Coates v. Colvin*, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015) (remanding for clarification after identifying a similar unresolved inconsistency).

A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. *See Welsh v. Colvin*, 765 F.3d

12

926, 930 (8th Cir. 2014) (holding that the ALJ had complied with SSR 00-4P because, in response to extensive questioning by the ALJ regarding inconsistencies, the VE offered evidence of her personal observations of the requirements of the proposed jobs and cited to a professional journal to support her recommendation). Here, in response to the ALJ's questioning, the VE stated that the DOT does not differentiate between reaching forward or to the side and reaching overhead. Tr. 1409. The VE testified that a restriction to overhead lifting implicitly means no overhead reaching. *Id.* She stated that in her opinion semiconductor bonder, ampoule sealer, and document preparer "would not require reaching or lifting overhead." When asked if her testimony was inconsistent with the DOT, the VE stated "[n]ot inconsistent, I have basically defined what reaching and lifting would entail in these jobs, which is not described in the DOT." *Id.* However, the Programs Operations Manual defines reaching as "[e]xtending the hands and arms in any direction." POMS DI 25001.001, paragraph 63. The individual job descriptions for semiconductor bonder, ampoule sealer, and document preparer do not specify in which directions reaching is required.

The VE provided no specific personal observations or further explanation to support her opinion that positions requiring frequent and occasional reaching were consistent with the hypothetical limiting Alhilfy to no reaching over her shoulder. She based her opinion only on her professional experience, which includes job analysis, on-site doing of the jobs, work histories, and her experience as a vocational rehabilitation counselor. Tr. 1409. "The VE's vague assurances that she relied on some combination of the DOT and her professional experience failed to provide a reasonable explanation to resolve the conflict." *Pixler v. Berryhill*, 2018 WL 3742457, at *8 (W.D. Mo. Aug. 7, 2018); *Coates*, 2015 WL 4610991, at *2. *See also Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014) (remanding because the VE's testimony

"was not sufficient to satisfy the question of whether or not the job of a cafeteria attendant requires more than occasional overheard reaching and that the ALJ improperly relied on the testimony of the VE without resolving the apparent conflict"). Accordingly, the ALJ failed to meet his burden at step five and establish that jobs exist in the economy that Alhilfy is capable of performing.

Finally, Alhilfy argues that the ALJ limited her to repetitive work in the RFC, but the job of document preparer is not identified as a repetitive job in the DOT. Doc. 17, p. 60. The DOT lists document preparer as a job that performs a variety of duties. *See* DOT 249.587-018. The Court agrees, and the ALJ must clarify this inconsistency on remand.

### III. Conclusion

For the foregoing reasons, the Court reverses and remands for further development of the record consistent with this Order.

s/Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: February 9, 2021  
Jefferson City, Missouri